MOHAWK CARPET MILLS, INC., Appellant, *v.* STATE OF NEW YORK, Respondent. (Claim No. 25201.)

Third Department, May 10, 1944.

*Coleman Taylor*, attorney (*James W. Ferguson* and *Daisy S. Borst* of counsel), for appellant.

*Nathaniel L. Goldstein, Attorney-General* (*Orrin G. Judd, Solicitor General; Arthur W. Mattson* and *Marvin P. Lazarus* of counsel), for respondent.

BLISS, J. This claim is for damages to the real and personal property of the Mohawk Carpet Mills, Inc., of Amsterdam, N. Y., caused by a flood in the Mohawk River and Barge Canal on February 7, 1938. The Mohawk River was converted into the Barge Canal pursuant to Laws of 1903, chapter 147. The work began in 1912 and was completed in 1916. Claimant's

mill is located on the north bank of the river near the east end of the city of Amsterdam. Prior to the canalization there were a number of islands along the southerly half of the river from a point at the highway bridge near the center of the city of Amsterdam, continuing downstream for several miles. About 700 feet west of claimant's property was Davey Island which was 1,900 feet long and located near the center of the river. A short distance farther west between Davey Island and the south bank was another island 1,000 feet long. The water in the river flowed on both sides of these islands although the channel to the north of Davey Island was somewhat deeper and the current stronger than to the south of this island. The main channel continued downstream north of the chain of islands for a distance of about 4,500 feet. It then passed to the south of Swarts Island which was about 2,500 feet long. In the development of the canal this main channel was widened to a width of 200 feet and deepened to an established grade of 12 feet. About 80 feet were taken off of the north side of Davey Island. This spoil along with large quantities of other spoil was dumped in the channels back or south of the chain of islands down to Swarts Island, where it was spoiled in back and to the north of the latter.

The Schoharie River empties into the Mohawk a few miles above Amsterdam. On January 25, 1938, the ice went out of the Schoharie River and lodged in the Mohawk below Amsterdam so that there was an almost continuous ice jam from Swarts Island westward to the bridge in the city of Amsterdam. This ice jam was variously described as being from 10 to 40 feet in height above the water level of the river, extending from shore to shore, frozen clear to the bottom of the river, and as a " young glacier ". There was some open water but very little. The jam remained frozen solid in the river until February 7th when rain upstream raised the Mohawk to flood stage and ice in the Mohawk above Amsterdam started to go out. This ice piled against the ice jam below, the high water flooded claimant's mill, huge cakes of ice were forced against the side of the mill and the walls were crushed in. The building was so badly damaged it had to be torn down and much material was lost in the flood.

Claimant established by what we think is the weight of the evidence, that the alterations made by the State in the channels of the river caused the main current of the river at the time of the flood to be turned with greater force against claimant's property so that the ice and water damaged it. Certain it is,

that the water and ice, when the river was at flood stage, had not been precipitated against claimant's property with such force, speed and devastating effect before the back channels were filled by the State and when they were open for flood waters. Also, while ice gorges had previously formed at various points in the river in the vicinity of claimant's property, principally at the heads of the islands, no such ice jam as this one was ever shown to have previously existed.

Claimant urges further that when the State improved the river it deposited large boulders in dump pits in the bottom of the main channel which extended above the surrounding river bottom and that the ice jam was held back by these boulders acting as keys. River experts testified that this construction on the part of the State contributed to keep the formation of the ice jam and to hold it back when the floods came. Claimant also urges negligence on the part of the State for its failure to remove or even attempt to remove the ice jam by dynamiting. Several witnesses testified to the feasibility of such procedure. While the testimony on the subject of the boulders in the dump pits and the probabilities that the ice jam could have been removed by dynamiting is not as strong as that on the subject of the effect of alterations in the channel, here again we feel that the weight of the testimony is with the claimant. The existence of the boulders was undisputed and their effect upon the movement of the ice jam was clearly shown. The State considered the possibility of dynamiting the ice jam but decided not to attempt it, principally because in previous years the ice had moved out of the river below Amsterdam before it moved down from the upper Mohawk west of the mouth of the Schoharie River. In any event the State made no attempt to use dynamite to see whether or not it would work.

The law dealing with claims against the State arising from construction and operation of the Barge Canal is well settled. At the time of this flood, section 47 of the Canal Law (now § 120) provided that there should be allowed and paid to every person sustaining damages from the State's canals or from their use or management or arising from the neglect or conduct of any officer of the State having charge thereof, the amount of such damage which was to be ascertained and determined by the Court of Claims. No judgment could be awarded for such damages unless the facts proved made out a case which would create a legal liability against the State were the same established in evidence in a court of justice against an individual. The situation in the instant case is almost identical with that

in *Mendelson* v. *State of New York* (218 App. Div. 210, affd. without opinion in 245 N. Y. 634) where the law is discussed by Mr. Justice DAVIS, formerly of this court, so that there is no need for an extended discussion here. Suffice it to say that when the State so blocked the southerly channels of the river as to force the flood waters against the claimant's property and at a greater speed than that at which it formerly flowed under such conditions, the State became liable for the damages which it thus caused. Likewise when the neglect and failure of the State to remove the ice jam which its changes in the river had contributed to cause, liability on the part of the State was created. The issues here are chiefly of fact. The State had knowledge of the condition of the river because it had created those conditions. Its employees also had full knowledge of the existence of the ice jam and made no effort to remove it. Under these conditions the State is liable to this claimant.

The State asks that if this court finds liability it remit the claim to the Court of Claims for a new trial of the question of damages. It claims that its evidence as to damages was not fully presented on the previous trial. In this record there is little dispute as to the damages and the court feels that these issues should be more fully tried. The Court of Claims did not pass upon the amount of damages as it did not reach that subject.

The judgment of the Court of Claims dismissing the claim upon the merits should be reversed on the law and facts, and findings of liability made and the matter remitted to the Court of Claims for a new hearing and determination of the amount of damages.

HILL, P. J., SCHENCK and BREWSTER, JJ., concur; HEFFERNAN, J., taking no part.

Judgment of Court of Claims reversed on the law and facts, with costs and disbursements, and matter remitted to the Court of Claims for a new trial of the question of damages.

The court reverses the following findings of fact made by the Court of Claims: 8, 10, 11, 14 of State's requests to find, 14, 15, 16 of the decision. All findings of fact contained in any conclusion of law.

Disapproves the following conclusions of law: V, VI, VII, VIII, IX, X, XI and XII of State's requests to find, 1, 2 and 3 of the decision.

Makes the following findings of fact: 2, 3, 15(i), 15(n), 15(o), 15(p), 16, 17, 19, 20, 21, 24, 26, 27, 28, 29, 30, 31, 32 and 33 of claimant's requests to find, 1 of State's requests to find.

Makes the following conclusions of law: ½ of claimant's requests to find. The court also finds and concludes: That the claimant is entitled to judgment against the State of New York in such sum as shall be hereinafter determined as the damages suffered by the claimant by reason of the acts of the State.

That this matter and claim be remitted to the Court of Claims for a new trial of the question of damages and a hearing and determination of the damages sustained by claimant as the result of the acts of the State.